**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| CHARLES PIERCE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>700CREDIT, LLC,<br><br>Defendant. | Case No. ________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Charles Pierce, individually and on behalf of all others similarly situated, asserts the following against Defendant 700Credit, LLC ("700Credit" or "Defendant"), based on personal knowledge, where applicable, information and belief, and the investigation of counsel.

## INTRODUCTION

1. 700Credit is the largest provider of credit reports, soft pull credit data, identity verification, fraud detection and compliance solutions in Automotive, RV, Powersports and Marine dealerships across the United States

2. As a vendor that routinely works in the automative sector and handles consumers' financial data, 700Credit was well aware of the need to adopt robust data security measures to ensure the sensitive data in its custody was adequately protected from unauthorized use and disclosure.

3. It did not. In late October 2025, 700Credit suffered a data breach affecting nearly 18,000 dealerships and more than 5.6 million customers (the "Data Breach"), and involved names, addresses, Social Security numbers, and employment information ("PII").

4. 700Credit communicates with over 200 integration partners through APIs. One of those partners was compromised in July 2025, but the company did not notify 700Credit. Hackers took over that partner's system and gained access to communications logs, which exposed an API

used to pull consumer information. The breach revealed a vulnerability in 700Credit's validation process.

5. On October 25, 2025, hackers launched a sustained velocity attack that continued for more than two weeks. Although 700Credit shut down the exposed API, attackers still managed to obtain about 20% of consumer data from May to October 2025.

6. 700Credit waited until early December 2025 to begin notifying affected dealerships and consumers of the Data Breach—months after the breach occurred.

7. 700Credit had a duty to safeguard and protect consumers' PII that was entrusted to it and could have prevented the Data Breach had it implemented and maintained reasonable data security measures and protocols.

8. 700Credit was fully aware that it was a prime target for cyber threats given its role as a vendor to dealerships. The prevalence of these types of financial services breaches put it on notice of this fact.

9. The Data Breach was a direct and proximate result of 700Credit's failure to implement and follow basic security procedures.

10. Because of 700Credit's failures, unauthorized individuals were able to access and pilfer Plaintiff's and Class Members' PII.

11. As a result, Plaintiff and Class Members are at substantially increased risk of future identity theft, both currently and for the indefinite future. Plaintiff's and Class Members' PII, including their Social Security numbers, that were compromised by cybercriminals in the Data Breach, is highly valuable because it is readily useable to commit fraud and identity theft.

12. Plaintiff, on behalf of himself and all others similarly situated, brings claims for negligence, breach of implied contract, and unjust enrichment.

13. Plaintiff seeks damages and injunctive relief requiring 700Credit to adopt

reasonably sufficient practices to safeguard the PII in 700Credit's custody and control to prevent incidents like the Data Breach from recurring in the future.

14. Given that information relating to the Data Breach, including the systems that were impacted and the configuration and design of 700Credit's systems, remain exclusively in 700Credit's control, Plaintiff anticipates additional support for his claims will be uncovered following a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C § 1332(d), because the amount in controversy for the Class exceeds $5,000,000 exclusive of interest and costs, there are more than 100 putative Members of the Class defined below, and a significant portion of putative Class Members are citizens of a different state than 700Credit.

16. This Court has personal jurisdiction over 700Credit because 700Credit maintains its principal place of business in Michigan, conducts substantial business in this state and 700Credit's acts and omissions giving rise to Plaintiff's and the Class's claims occurred in this forum.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because 700Credit's principal place of business is in Oakland County and a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District.

## PARTIES

### I. Plaintiff

18. Plaintiff Charles Pierce is a citizen and resident of the State of Indiana.

19. Plaintiff received a data breach notification email from 700Credit on behalf of his vehicle's dealer.

20. Plaintiff provided his PII, either directly or indirectly, to 700Credit prior to the Data

Breach as a condition of and in exchange for receiving services with 700Credit.

**II. Defendant**

21. Defendant 700Credit, LLC is a Delaware limited liability company with its headquarters and principal place of business located at 26555 Northwestern Highway, Suite 301, Southfield, Michigan, 48033.

## BACKGROUND

**I. 700Credit Obtains, Collects, and Stores PII**

22. 700Credit is the largest provider of credit reports, soft pull credit data, identity verification, fraud detection and compliance solutions in Automotive, RV, Powersports and Marine dealerships across the United States.

23. 700Credit is in complete operation, control, and supervision of its systems, and configured and designed its systems without adequate data security protections.

24. 700Credit was entrusted with Plaintiff's and the Class's PII and was expected to secure and safeguard that information. Indeed, 700Credit acknowledges that it handles sensitive types of data in its Privacy Policy and represents that "'Personally identifiable information" (PII) is information about you, such as name, address, e-mail address, user ID, credit card number, and social security number," and that at 700Credit "we strive to protect your personally identifiable information."[1]

25. 700Credit did not properly verify, oversee, and supervise its entrustment of Plaintiff's and Class Members' PII.

26. By obtaining, using, disclosing, and deriving a benefit from Plaintiff's and Class Members' PII, 700Credit assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure.

[1] *Privacy Policy*, 700Credit, https://www.700credit.com/privacy-policy/.

27. Plaintiff and Class Members reasonably expect that a vendor to dealerships such as 700Credit would use the utmost care to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

28. 700Credit failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and Class Members' PII.

29. Had 700Credit followed industry guidelines and adopted reasonable security measures, 700Credit would have prevented the theft of Plaintiff's and Class Members' PII.

## II. FTC Guidelines

30. 700Credit is prohibited by the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

31. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

32. The FTC provided cybersecurity guidelines for businesses, advising that businesses should protect personal customer information, properly dispose of personal information that is no longer needed, encrypt information stored on networks, understand its network's vulnerabilities, and implement policies to correct any security problems.

33. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to private data; require complex passwords

to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

34. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

35. 700Credit failed to properly implement basic data security practices. 700Credit's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII, or to prevent the disclosure of such information to unauthorized individuals, as reflected by the sensitive Social Security information stolen, constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

36. 700Credit was always fully aware of its obligations to protect the PII of consumers because of its business of obtaining, collecting, and disclosing PII as well as collecting, storing, and using other confidential personal and financial information. 700Credit was also aware of the significant repercussions that would result from its failure to do so.

## SUBSTANTIVE ALLEGATIONS

### I. The Data Breach

37. 700Credit communicates with over 200 integration partners through APIs. One of those partners was compromised in July 2025, but the company did not notify 700Credit. Hackers took over that partner's system and gained access to communications logs, which exposed an API used to pull consumer information. The breach revealed a vulnerability in 700Credit's validation process.

38. On October 25, 2025, hackers launched a sustained velocity attack that continued for more than two weeks.

39. Although 700Credit shut down the exposed API, attackers still managed to obtain about 20% of consumer data from May to October 2025.

40. The Data Breach affected nearly 18,000 dealerships and more than 5.6 million customers, and included PII such as customers names, addresses, Social Security numbers, and employment information.

41. On or around December 2, 2025, 700Credit, in partnership with the National Automobile Dealers Association (NADA), coordinated with the FTC to file a consolidated breach notice on behalf of all affected dealerships. 700Credit secured FTC approval to notify customers on behalf of dealerships.

42. 700Credit began notifying customers of the Data Breach in early December 2025.

43. Plaintiff's and the Class's PII was disclosed without their authorization to unknown third parties as a result of the Data Breach.

44. As a result of the Data Breach, Plaintiff spent significant time and effort researching the Data Breach and reviewing and monitoring their accounts for fraudulent activity.

45. Plaintiff places significant value in the security of their PII. Plaintiff expected that their PII would be safeguarded by their dealerships and their vendors, such as 700Credit. 700Credit obtained this PII with the understanding that it would keep this information secure and employ reasonable and adequate security measures to ensure that it would not be compromised.

46. As a result of the Data Breach, Plaintiff has been and will continue to be at a heightened and substantial risk of future identity theft and its attendant damages for years to come. Such risk is certainly real and impending, and is not speculative, given the highly sensitive nature of the PII compromised by the Data Breach.

## II. 700Credit's Data Security Failures Caused the Data Breach

47. According to a summarized interview made by 700Credit's Managing Director Ken Hill to auto industry news website, CBT News, "[t]he company has increased its cybersecurity insurance, strengthened API inspections and is moving toward a more secure system backbone with enhanced protections."[2]

48. These changes confirm that 700Credit did not have these practices and protocols in place prior to the Data Breach and that the breach likely occurred by hackers gaining access to 700Credit's validation process.

49. 700Credit's failure to use these basic precautions that could have prevented the Data Breach was negligent and a breach of its duties to safeguard Plaintiff's and the Class's PII.

## III. 700Credit's Data Security Failures Constitute Unfair and Deceptive Practices and Violations of Consumers' Privacy Rights

50. The FTC deems the failure to employ reasonable and appropriate measures to protect against unauthorized access to sensitive personal information an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

51. In 2007, the FTC published guidelines that establish reasonable data security practices for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand its network's vulnerabilities; and implement policies for installing vendor-approved patches to correct security problems. The guidelines also recommend that businesses consider using an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone may be trying to hack the system; watch for large amounts of data being transmitted from the system; and

---

[2] Jasmine Daniel, *700Credit's Ken Hill on recent data breach and what dealers need to know*, CBT NEWS, Dec. 4, 2025, https://www.cbtnews.com/700credits-ken-hill-on-recent-data-breach-and-what-dealers-need-to-know/ (last visited December 12, 2025).

have a response plan ready in the event of a breach.

52. The FTC has also published a document entitled "FTC Facts for Business," which highlights the importance of having a data security plan, regularly assessing risks to computer systems, and implementing safeguards to control such risks.

53. The FTC has issued orders against businesses that have failed to employ reasonable measures to secure sensitive personal information. These orders provide further guidance to businesses regarding their data security obligations.

54. Prior to the Data Breach, and during the Data Breach itself, 700Credit failed to follow guidelines set forth by the FTC and actively mishandled the management of its IT security.

55. Furthermore, by failing to have reasonable data security measures in place, 700Credit engaged in an unfair act or practice within the meaning of Section 5 of the FTC Act.

**IV. The Value of the Disclosed PII and Effects of Unauthorized Disclosure**

56. 700Credit understood the protected PII it acquires, stores, and utilizes is highly sensitive and of significant value to the owners of the PII and those who would use it for wrongful purposes.

57. PII is a valuable commodity to identity thieves, particularly when it is aggregated in large numbers.

58. Sensitive personal information commonly stolen in data breaches has economic value. The purpose of stealing large caches of personal data is to use it to defraud individuals or to place it for illegal sale and to profit from other criminals who buy the data and use it to commit fraud and identity theft. Indeed, cybercriminals routinely post stolen personal information on anonymous websites, making the information widely available to a criminal underworld. There is an active and robust market for this information.

59. The forms of PII involved in this Data Breach are particularly concerning. Unique

Social Security numbers cannot be easily replaced. And even when such numbers are replaced, the process of doing so results in a major inconvenience to the subject person, requiring a wholesale review of the person's relationships with government agencies and any number of private companies in order to update the person's accounts with those entities.

60. The Social Security Administration warns that the process of replacing a social security number is a difficult one that creates other types of problems, and that it will not be a panacea for the affected person:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.
>
> If you receive a new Social Security Number, you should not be able to use the old number anymore.
>
> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make more difficult for you to get credit.

61. Social Security numbers allow individuals to apply for credit cards, student loans, mortgages, and other lines of credit—among other services. Often Social Security numbers can be used to obtain medical goods or services, including prescriptions. They are also used to apply for a host of government benefits. Access to such a wide range of assets makes Social Security numbers a prime target for cybercriminals and a particularly attractive form of PII to steal and then sell.

62. The ramifications of 700Credit's failure to keep Plaintiff's and Class Members' PII secure are long lasting and severe.

63. To avoid detection, identity thieves often hold stolen data for months or years before using it. Also, the sale of stolen information on the "dark web" may take months or more to reach end-users, in part because the data is often sold in small batches as opposed to in bulk to a single buyer. Thus, Plaintiff and Class Members must vigilantly monitor their financial accounts *ad infinitum*.

64. Thus, 700Credit knew, or should have known, the importance of safeguarding the PII entrusted to it and of the foreseeable consequences if its systems were breached. 700Credit failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

65. As a highly sophisticated party that handles sensitive PII, 700Credit failed to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure it protected the security and confidentiality of Plaintiff's and Class Members' PII to protect against anticipated threats of intrusion of such information.

66. Identity thieves use stolen PII for various types of criminal activities, such as when personal and financial is used to commit fraud or other crimes, including credit card fraud, phone or utilities fraud, bank fraud and government fraud.

67. The PII exfiltrated in the Data Breach can also be used to commit identity theft by placing Plaintiff and Class Members at a higher risk of "phishing," "vishing," "smishing," and "pharming," which are other ways for cybercriminals to exploit information they already have in order to get even more personally identifying information from a person through unsolicited email, text messages, and telephone calls purportedly from a legitimate company requesting personal, financial, and/or login credentials.

68. There is often a lag time between when fraud occurs versus when it is discovered, and also between when PII is stolen and when it is used.

69. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

70. PII is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black market for years.

71. Plaintiff and Class Members rightfully place a high value not only on their PII, but also on the privacy of that data.

72. Thus, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

## V. The Data Breach Damaged Plaintiff and Class Members

73. As a result of 700Credit's deficient security measures, Plaintiff and Class Members have been harmed by the compromise of their sensitive PII, which is likely for sale on the dark web and through private sale to other cyber criminals and/or being used by criminals for identify theft and other fraud-related crimes.

74. Plaintiff and Class Members face a substantial and imminent risk of fraud and identity theft as their names have now been linked with their dates of birth and Social Security numbers as a result of the Data Breach. These specific types of information are associated with a high risk of fraud.

75. Plaintiff has been damaged as a result of the Data Breach, *inter alia*, as described above.

76. Many Class Members will also incur out-of-pocket costs for protective measures such as identity theft protection, credit monitoring fees, credit report fees, credit freeze fees, fees

for replacement cards, and similar costs related to the Data Breach.

77. Plaintiff and Class Members also suffered a "loss of value" of their sensitive PII when it was stolen by hackers in the Data Breach. A robust market exists for stolen PII. Hackers sell PII on the dark web—an underground market for illicit activity, including the purchase of hacked PII—at specific identifiable prices. This market serves as a means to determine the loss of value to Plaintiff and Class Members.

78. Identity thieves can also combine data stolen in the Data Breach with other information about Plaintiff and Class Members gathered from underground sources, public sources, or even Plaintiff's and Class Members' social media accounts. Thieves can use the combined data to send highly targeted phishing telephone calls, text messages, and emails to Plaintiff and Class Members to obtain more sensitive information. Thieves can use the combined data to commit potential crimes, including opening new financial accounts in Plaintiff's and Class Members' names, taking out loans in Plaintiff's and Class Members' names, using Plaintiff's and Class Members' information to obtain government benefits, filing fraudulent tax returns using Plaintiff's and Class Members' information, obtaining Social Security numbers in Plaintiff's and Class Members' names but with another person's photograph, and giving false information to police during an arrest.

79. Plaintiff and Class Members have spent and will continue to spend substantial amounts of time monitoring their accounts for identity theft and fraud, the opening of fraudulent accounts, disputing fraudulent transactions, and reviewing their financial affairs more closely than they otherwise would have done but for the Data Breach. These efforts are burdensome and time-consuming, especially because 700Credit has disclosed little information about the Data Breach, forcing consumers to continue to monitor their accounts indefinitely.

80. In the case of a data breach, merely reimbursing a consumer for a financial loss due

to identity theft or fraud does not make that individual whole again, especially when that individual spent significant time monitoring their accounts and rectifying any problems that arose.

81. A victim whose personal information has been stolen or compromised may not see the full extent of identity theft or fraud until long after the initial breach. Additionally, a victim whose personal information (including Social Security numbers) has been stolen may not become aware of charges when they are nominal, as typical fraud-prevention algorithms may not capture such charges. Those charges may be repeated, over and over again, on a victim's account.

## CLASS ACTION ALLEGATIONS

82. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of the following nationwide Class:

> All persons residing in the United States whose PII was compromised in the Data Breach.

83. Excluded from the Class is 700Credit, its subsidiaries and affiliates, its officers, directors and members of their immediate families and any entity in which 700Credit has a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

84. Plaintiff reserves the right to modify, expand or amend the above Class definitions or to seek certification of a class or classes defined differently than above before any court determines whether certification is appropriate following discovery.

85. Certification of Plaintiff's claims for class-wide treatment are appropriate because all elements of Fed. R. Civ. P. 23(a) and (b)(2)-(3) are satisfied. Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

86. **Numerosity**. All requirements of Fed. R. Civ. P. 23(a)(1) are satisfied. The

Members of the Class are so numerous and geographically dispersed that individual joinder of all Class Members is impracticable. Public reporting of the Data Breach indicates it includes approximately 5.6 million customers. While Plaintiff is informed and believe that there are likely millions of members of the Class, the precise number of Class Members is not yet known to Plaintiff.

87. Class Members may be identified through objective means. Class Members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

88. **Commonality and Predominance**. All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members, including, without limitation:

a. Whether 700Credit engaged in active misfeasance and misconduct alleged herein;

b. Whether 700Credit owed a duty to Class Members to safeguard their sensitive PII;

c. Whether 700Credit failed to implement and maintain reasonable security procedures and monitoring practices appropriate for the nature and scope of the information compromised in the Data Breach;

d. Whether 700Credit breached its duty to Class Members to safeguard their sensitive PII;

e. Whether 700Credit's conduct violated the FTC Act;

f. Whether 700Credit's data security systems and monitoring processes prior to and during the Data Breach complied with applicable law and were consistent with industry standards;

g. Whether 700Credit breached implied contracts with Plaintiff and Class Members;

h. Whether 700Credit was unjustly enriched by unlawfully retaining a benefit conferred upon it by Plaintiff and Class Members;

i. Whether Plaintiff and Class Members suffered legally cognizable damages as a result of the Data Breach;

j. Whether 700Credit's failure to provide adequate security proximately caused Plaintiff's and Class Members' injuries;

k. Whether 700Credit owed a duty to provide timely and adequate notice of the Data Breach to Plaintiff and Class Members;

l. Whether 700Credit failed to notify Plaintiff and Class Members as soon as practicable and without delay after the Data Breach was discovered; and

m. Whether Plaintiff and Class Members are entitled to declaratory and injunctive relief.

89. **Typicality.** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiff's claims are typical of the claims of all Class Members because Plaintiff, like other Class Members, suffered theft of their sensitive personal information in the Data Breach.

90. **Adequacy of Representation.** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiff is an adequate Class representative because he is a member of the Class and his interests do not conflict with the interests of other Class Members that he seeks to represent. Plaintiff is committed to pursuing this matter for the Class with the Class's collective best interest in mind. Plaintiff has retained counsel competent and experienced in complex class action litigation of this type, and Plaintiff intends to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the Class's interests.

91. **Predominance and Superiority.** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiff's case will also resolve them for the Class's claims.

In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against 700Credit, so it would be impracticable for Members of the Class to individually seek redress for 700Credit's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

92. **Cohesiveness**. All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. 700Credit has acted, or refused to act, on grounds generally applicable to the Class such that final declaratory or injunctive relief is appropriate.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE

93. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

94. By collecting and maintaining sensitive PII, 700Credit had a common law duty of care to use reasonable means to secure and safeguard the sensitive PII and to prevent disclosure of the information to unauthorized individuals. 700Credit's duty included a responsibility to implement processes to prevent unauthorized access to its network, including by implementing multi-factor authentication and other precautions.

95. 700Credit owed a duty to Plaintiff and Class Members to exercise reasonable care

in obtaining, securing, safeguarding, storing, and protecting Plaintiff's and Class Members' PII in its control from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

96. 700Credit owed a duty of care to Plaintiff and Class Members to provide data security consistent with the various industry standards, statutory requirements, regulations, and other notices described above.

97. 700Credit's duty of care also arose as a result of the special relationship that existed between 700Credit and Plaintiff and Class Members. The special relationship arose because 700Credit was entrusted with Plaintiff's and the Class's PII. Only 700Credit was in a position to ensure it had sufficient safeguards to protect against the foreseeable risk that a data breach could occur and would result in substantial harm to Plaintiff and Class Members.

98. 700Credit's duties also arose under Section 5 of the FTC Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect personal and confidential information. Plaintiff and Class Members are consumers within the class of persons Section 5 of the FTC Act was intended to protect. Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against.

99. 700Credit was subject to an "independent duty" untethered to any contract.

100. 700Credit also owed Plaintiff and Class Members a duty to notify them within a reasonable time frame of any breach to their PII. 700Credit also owed a duty to timely and accurately disclose to Plaintiff and Class Members the scope, nature, and occurrence of the Data Breach. This duty is necessary for Plaintiff and Class Members to take appropriate measures to protect their PII, to be vigilant in the face of an increased risk of harm, and to take other necessary steps in an effort to mitigate the fallout of the Data Breach.

101. 700Credit owed these duties to Plaintiff and Class Members because they are

members of a well-defined, foreseeable, and probable class of individuals whom 700Credit knew or should have known would suffer injury-in-fact from its inadequate security protocols. After all, 700Credit actively sought and obtained the PII of Plaintiff and Class Members.

102. Given the vast amount of highly valuable PII that 700Credit aggregates, the risk that unauthorized persons would attempt to gain access to Plaintiff's and Class Members' PII and misuse it was foreseeable.

103. 700Credit knew or should have known the importance of exercising reasonable care in handling the PII entrusted to it.

104. Given the nature of 700Credit's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, 700Credit should have identified and foreseen vulnerabilities in its systems and prevented the authorized exfiltration of Plaintiff's and Class Members' PII.

105. It was or should have been reasonably foreseeable to 700Credit that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class Members' PII to unauthorized individuals.

106. It was also foreseeable that 700Credit's failure to provide timely and adequate notice of the Data Breach would result in injury to Plaintiff and Class Members.

107. 700Credit breached its duties, and thus was negligent, by failing to use reasonable measures to protect Plaintiff's and Class Members' PII. But for 700Credit's negligence, Plaintiff and Class Members would not have been injured. The specific negligent acts and omissions committed by 700Credit include, but are not limited to:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b. Failing to comply with—and thus violating—FTC Act and its regulations;

c. Failing to adequately monitor the security of its networks and systems;

d. Failing to have in place mitigation policies and procedures;

e. Allowing unauthorized access to Plaintiff's and Class Members' PII;

f. Failing to timely notify Plaintiff and Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

108. It was foreseeable that 700Credit's failure to use reasonable measures to protect Plaintiff's and Class Members' PII would result in injury to Plaintiff and Class Members.

109. Furthermore, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the industry. It was therefore foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in one or more types of injuries to Plaintiff and Class Members.

110. Plaintiff and Class Members had and have no ability to protect their PII that was, or remains, in 700Credit's possession and control.

111. But for 700Credit's negligent conduct or breach of the above-described duties, Plaintiff's and Class Members' PII would not have been compromised. The PII of Plaintiff and the Class was accessed and stolen as the proximate result of 700Credit's failure to exercise reasonable care in safeguarding, securing, and protecting such PII by implementing and maintaining appropriate security measures.

112. 700Credit's failure to take proper security measures created conditions conducive to a foreseeable, intentional criminal act, namely the unauthorized access of Plaintiff's and Class Members' PII.

113. Neither Plaintiff nor the other Class Members contributed to the Data Breach and

subsequent misuse of their PII.

114. As a direct and proximate result of 700Credit's negligence, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

115. Plaintiff and Class Members are also entitled to injunctive relief requiring 700Credit to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT II
## BREACH OF IMPLIED CONTRACT

116. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

117. 700Credit solicited Plaintiff's and the Class's PII from their dealerships as part of its regular business practice.

118. Plaintiff and Class Members reasonably believed and expected that their dealerships, including their vendors like 700Credit, had data security practices that complied with relevant laws, regulations, and industry standards when they entered into the contracts with 700Credit.

119. Plaintiff and Class Members reasonably believed and expected that 700Credit would use part of the funds it obtained from their dealerships to obtain and oversee adequate data security. 700Credit failed to do so.

120. 700Credit affirmatively acknowledges that it handles sensitive types of data in its Privacy Policy.

121. Plaintiff and Class Members would not have provided their sensitive PII to their

dealerships and, consequently, 700Credit, in the absence of 700Credit's implied promise to keep their sensitive PII reasonably secure.

122. Plaintiff and Class Members fully performed their obligations under the implied contracts by providing their PII to their dealerships and, consequently, 700Credit.

123. 700Credit breached its implied contracts with Plaintiff and Class Members by failing to safeguard and protect their PII.

124. As a direct and proximate result of 700Credit's breaches of the implied contracts, Plaintiff and Class Members have been injured as alleged herein. Plaintiff and Class Members are entitled to damages, including actual, compensatory, punitive, and nominal damages suffered because of the Data Breach in an amount to be proven at trial.

125. Plaintiff and Class Members are also entitled to injunctive relief requiring 700Credit to, among other things: (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems; and (iii) provide free and adequate credit monitoring and identity theft insurance to all Class Members for the remainder of their lives.

## COUNT III
## UNJUST ENRICHMENT

126. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

127. Plaintiff and Class Members conferred a monetary benefit upon 700Credit in the form of their valuable PII, which it used to provide services to dealerships for profit.

128. 700Credit was expected to use these profits, in part, to pay for and oversee adequate data privacy infrastructure, practices, and procedures necessary to protect this PII.

129. Plaintiff and Class Members allowed 700Credit to access and store their PII on the belief that 700Credit complied with its duty to safeguard and protect this information. Putting its short-term profit ahead of safeguarding PII, and unbeknownst to Plaintiff and Class Members,

700Credit knowingly sacrificed security in favor of collecting more profits. 700Credit knew that the manner in which it maintained Plaintiff's and Class Members' PII violated its fundamental duties to Plaintiff and Class Members by disregarding industry-standard security protocols to ensure confidential information was securely transmitted and stored.

130. 700Credit had within its exclusive knowledge at all relevant times the fact that it failed to implement adequate security measures to keep PII secure. This information was not available to Plaintiff, Class Members, or the public at large.

131. Based on this expectation and trust, 700Credit knew that Plaintiff and Class Members would not have disclosed their sensitive information to it if they had known it had inadequate data security.

132. Plaintiff and Class Members did not expect that 700Credit would store their PII insecurely and would not have allowed 700Credit to store their PII if they had known of its deficient data security.

133. 700Credit enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII. Under the principles of equity and good conscience, 700Credit should not be permitted to retain these benefits.

134. Plaintiff and Class Members have no adequate remedy at law. 700Credit should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable gains it received.

**COUNT IV**
**DECLARATORY AND INJUNCTIVE RELIEF**

135. Plaintiff re-alleges and incorporates by reference all preceding allegations as if fully set forth herein.

136. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant

further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the statutes described in this Complaint.

137. An actual controversy has arisen in the wake of the Data Breach regarding 700Credit's present and prospective common law and statutory duties to reasonably safeguard its consumers' sensitive PII and whether 700Credit is currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches. Plaintiff alleges that 700Credit's data security practices remain inadequate.

138. Plaintiff and Class Members continue to suffer injury as a result of the compromise of their sensitive PII and remain at imminent risk that further compromises of their PII will occur in the future.

139. Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a. 700Credit continues to owe a legal duty to secure Class Members' PII and to timely notify Class Members of a data breach under the common law and Section 5 of the FTC Act; and

b. 700Credit continues to breach this legal duty by failing to employ reasonable measures to secure Class Members' PII, including to monitor, oversee, and audit its compliance with applicable industry standards, laws, and regulations.

140. The Court also should issue corresponding prospective injunctive relief requiring 700Credit to employ adequate security protocols consistent with law and industry standards to protect 700Credit's consumers' sensitive PII.

141. If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, for which they lack an adequate legal remedy. The threat of another data breach is real, immediate, and substantial. If another breach occurs, Plaintiff and Class Members will not have

an adequate remedy at law, because not all of the resulting injuries are readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

142. The hardship to Plaintiff and Class Members if an injunction does not issue greatly exceeds the hardship to 700Credit if an injunction is issued. If another data breach occurs, Plaintiff and Class Members will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to 700Credit of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and 700Credit has a pre-existing legal obligation to employ such measures.

143. Issuance of the requested injunction will serve the public interest by preventing another data breach concerning 700Credit's consumers' PII, thus eliminating the additional injuries that would result to Plaintiff and the thousands of consumers whose confidential information would be further compromised.

## REQUEST FOR RELIEF

Plaintiff, on behalf of himself and all others similarly situated, request that the Court enter judgment against 700Credit including the following:

A. Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B. Appointing Plaintiff as representatives of the applicable Class and appointing Plaintiff's counsel as Class Counsel;

C. Awarding Plaintiff and Class Members actual, compensatory, punitive, and nominal damages as set forth above;

D. Ordering injunctive relief requiring 700Credit to, among other things: (i) Strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems; (iii) provide lifetime free credit monitoring and identity theft insurance to all Class Members; and (iv) timely notify consumers of any future data breaches;

E. Entering a declaratory judgment stating that 700Credit owes a legal duty to secure its consumers' sensitive PII, to timely notify consumers of any data breach, and to establish and implement data security measures that are adequate to secure sensitive personal information;

F. Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

G. Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

H. Such other relief as the Court may allow.

## DEMAND FOR JURY TRIAL

144. Plaintiff demands a trial by jury for all issues so triable.

Dated: December 22, 2025

Respectfully submitted,

*s/ Christian Levis*
Christian Levis (N.Y. State Bar # 5153853)
Amanda G. Fiorilla (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Facsimile: (914) 997-0035
Email: clevis@lowey.com
Email: afiorilla@lowey.com

Anthony M. Christina (*pro hac vice forthcoming*)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
Facsimile: (914) 997-0035
Email: achristina@lowey.com

*Counsel for Plaintiff and the Class*